# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 15 2019, 10:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT, PRO SE

Lavern Baltimore
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Lavern Baltimore,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

August 15, 2019

Court of Appeals Case No.
22A01-1707-PC-1562

Appeal from the Floyd Superior Court

The Honorable Susan L. Orth, Judge

Trial Court Cause No.
22D01-1108-PC-5

**Pyle, Judge.**

# Statement of the Case

Lavern Baltimore ("Baltimore"), pro se, appeals the post-conviction court's denial of his petition for post-conviction relief ("PCR"). On appeal, Baltimore argues that he received ineffective assistance of counsel. Concluding that Baltimore was not denied effective assistance of trial counsel, we affirm the post-conviction court's judgment.

We affirm.

# Issue

Whether the post-conviction court erred in denying Baltimore's petition.

# Facts

The facts of the underlying offenses, as found by this Court, are as follows:

> In June 2006, Sandra Wright and David Whitten, a married couple, lived in a Floyd County apartment complex with their son. Sandra is deaf, and David is hard of hearing. Baltimore lived in the same apartment complex as Sandra and David. On the evening of June 15, 2006, Baltimore knocked on Sandra and David's door and asked David for a cigarette. Although David asked Baltimore to leave, Baltimore came back multiple times and continued to knock on the door. Sandra eventually fell asleep in the family room with the couple's son, and David fell asleep in the bedroom.
>
> At approximately 2:00 a.m., Sandra awoke and saw Baltimore inside the apartment, very close to her. Baltimore grabbed Sandra by the neck and arms, leaving marks on her skin. Baltimore picked up Sandra's son and kissed him. Sandra, who

believed Baltimore was "using drugs and was drunk," took her son and put him back to bed. Tr. p. 305. Baltimore then grabbed Sandra's neck and dragged her into the hallway, placing his hands under Sandra's shorts and on her breasts. David awoke to his wife's screams and found Baltimore in the family room with one hand on Sandra's face and the other on her breast. David told Baltimore to leave and he obeyed. After Baltimore left, David tried to close the front door of the apartment but was unable to do so because it was damaged.

*Baltimore v. State*, 878 N.E.2d 253, 355-56 (Ind. Ct. App. 2007), *trans. denied*.

[4] On June 19, 2006, the State charged Baltimore with Class A felony burglary and Class D felony sexual battery. In August 2006, a jury found Baltimore guilty as charged. At the sentencing hearing in November 2006, the trial court sentenced Baltimore to fifty-three (53) years in the Department of Correction. Thereafter, on direct appeal, Baltimore argued that: (1) the trial court committed fundamental error when it permitted the victim's sign language interpreter to testify as a witness for the State; (2) there was insufficient evidence to support his Class A felony burglary conviction; (3) his convictions violated double jeopardy principles; and (4) the trial court's sentence was inappropriate. This Court affirmed his convictions and sentence in December 2007.

[5] In August 2011, Baltimore filed a pro se petition for PCR. On November 7, 2011, the post-conviction court summarily denied Baltimore's petition, and Baltimore appealed that denial. Thereafter, on August 17, 2012, this Court remanded the case to the post-conviction court to enter findings of fact and conclusions of law. On September 24, 2012, the post-conviction court entered a revised order summarily denying Baltimore's petition. This Court reversed and

remanded, holding that because Baltimore pled facts that raised issues of possible merit, the post-conviction court erred by summarily denying his petition.

[6] In August 2016, Baltimore filed an amended petition for PCR. Baltimore alleged multiple grounds of ineffective assistance of trial counsel. Specifically, Baltimore alleged that his trial counsel was ineffective for failing to: (1) locate, interview, and subpoena Matthew McMahan ("McMahan"), the former owner of the apartment building; (2) file a motion to dismiss; (3) object to the testimony of a State's witness; and (4) object to various instances of prosecutorial misconduct, which included comments made by the prosecutor during open and closing arguments. The post-conviction court held a hearing on February 23, 2017. At the hearing, Baltimore called his trial attorney, Amber Shaw ("Attorney Shaw"), and McMahan as witnesses.

[7] When asked why she did not object to the prosecutor's comments made during opening and closing arguments, Attorney Shaw testified that she typically does not object during either because:

> it's usually a strategic decision to not do that because it looks bad to the jury when you interrupt them. And unless it's particularly egregious it can't be overcome and they also can't unhear it. It's sometimes better to not draw attention to something like that that they've said versus making it a big thing and redrawing attention to the comment in front of the jury. So sometimes you choose to just kinda let it pass as opposed to drawing attention to it. So that would have been a strategic decision as far as a trial.

(Tr. 16-17).  On June 14, 2017, the post-conviction court denied Baltimore's petition.  He now appeals.

# Decision

[8]  Baltimore argues that the post-conviction court erred in denying his petition. Post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and direct appeal.  *Pannell v. State*, 36 N.E.3d 477, 486 (Ind. Ct. App. 2015).  Such proceedings are not "super appeals" through which convicted persons can raise issues that they failed to raise at trial or on direct appeal.  *Id*.  Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence.  *Id*.  A party appealing from a negative judgment must establish that the evidence is without conflict and, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision.  *Conner v. State*, 711 N.E.2d 1238, 1244 (Ind. 1999), *reh'g denied*, *cert. denied*.

[9]  Where, as here, the post-conviction court makes findings of fact and conclusions of law, we cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support its judgment.  *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*.  Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard.  *Id*.  Accordingly, we will not reweigh the evidence

or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Id*. We must also acknowledge that the judge who presided over Baltimore's original trial is also the judge who presided over the post-conviction proceedings, and therefore the post-conviction court's findings and judgment are entitled to greater than usual deference. *See State v. Dye*, 784 N.E.2d 469, 476 (Ind. 2003) (noting that because the judge presided at both the original trial and post-conviction hearing, the judge was in "an exceptional position" to assess weight and credibility of factual evidence and whether defendant was deprived of a fair trial).[1]

[10] Baltimore contends that the post-conviction court erred in denying his claim of ineffective assistance of trial counsel. We review claims of ineffective assistance of trial counsel under the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show that trial counsel's performance fell below an objective standard of reasonableness based on

---

[1] Baltimore also contends that the post-conviction court "failed to enter specific findings of fact and conclusions of law on all issues presented" in his PCR petition as required by Post-Conviction Rule 1(6). (Baltimore's Br. 15). Indiana Post-Conviction Rule 1(6) requires a post-conviction court to make "specific findings of fact, and conclusions of law on all issues presented, whether or not a hearing is held." The post-conviction court did not specifically address Baltimore's claims of ineffective assistance of counsel for failing to object to: (1) two allegations of prosecutorial misconduct during closing arguments; and (2) the testimony of one of the State's witnesses. However, our court has held that a post-conviction court's failure to enter specific findings of fact and conclusions of law in ruling on a post-conviction petition is not reversible error when the issues are sufficiently presented for review and addressed by the parties. *Adcock v. State*, 22 N.E.3d 720, 724 (Ind. Ct. App. 2014). If the facts underlying a claim are not in dispute, the issues are sufficiently clear, and both parties address the merits in their briefs, remand for more specific findings by the post-conviction court is not necessary. *Id*. The underlying facts here are not in dispute, the issues are sufficiently clear, and both parties address the merits in their briefs. Consequently, we will address the issues rather than remanding to the post-conviction court.

prevailing professional norms and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Moody v. State*, 749 N.E.2d 65, 67 (Ind. Ct. App. 2001), *trans. denied*. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Moreover, because counsel is afforded considerable discretion in choosing strategy and tactics, a strong presumption arises that counsel rendered adequate assistance. *Id*.

[11]     Here, Baltimore contends that Attorney Shaw rendered ineffective assistance for the following reasons: (1) she did not locate, interview, and subpoena certain witnesses; (2) she failed to file a motion to dismiss the sexual battery charging information; (3) she failed to object to the testimony of a State's witness; and (4) she did not object to various instances of prosecutorial misconduct.

[12]     Baltimore's first claim of ineffectiveness arises from the allegation that counsel failed to investigate witnesses. According to Baltimore, he was "prejudiced as a result of trial counsel['s] failure to locate and interview his witnesses."[2] (Baltimore's Br. 20). To succeed on an ineffective assistance claim regarding a failure to interview or depose a witness, a post-conviction petitioner must show

---

[2] Baltimore refers to "witnesses," but he identified only McMahan and did not present any evidence of other witnesses or how they could have assisted him. Therefore, we will address only his claim regarding McMahan.

deficient performance. *Williams v. State*, 771 N.E.2d 70, 74 (Ind. 2002). "The question is what additional information may have been gained from further investigation and how the absence of that information prejudiced his case." *Id*.

[13] At the post-conviction hearing, Baltimore called McMahan, who did not testify at trial. Baltimore alleges that had counsel located and interviewed McMahan before trial, he would have testified that "the [S]tate's exhibits . . . did not depict Sandra's apartment door." (Baltimore's Br. 20). At the post-conviction hearing, McMahan testified that he only entered the apartment building approximately ten times, and he did not recognize the exhibit photographs of Sandra and David's apartment door. On appeal, Baltimore has failed to state what information counsel would have gained by interviewing McMahan. Nor does Baltimore state how the alleged failure to interview McMahan prejudiced his case. Thus, Baltimore's contention that his trial counsel was ineffective for failing to interview McMahan is without merit.

[14] Second, Baltimore asserts that counsel was ineffective for not moving to dismiss the charging information. Specifically, Baltimore alleges that Attorney Shaw should have moved to dismiss the sexual battery charging information based on "Sandra's own undisputed [deposition] testimony that Baltimore almost touched her breasts and vagina." (Baltimore's Br. 24). In order to prevail on his claim that trial counsel provided ineffective assistance by failing to file a motion to dismiss the sexual battery charging information, Baltimore bore the burden of demonstrating a reasonable probability that the motion to dismiss

would have been granted if made. *See Garrett v. State*, 992 N.E.2d 710, 723 (Ind. 2013).

[15] When asked during the post-conviction hearing why she did not move to dismiss the State's charging information, Attorney Shaw testified that Sandra's deposition testimony involved "a factual dispute" and the testimony "[wa]s not one of the grounds allowed under Indiana law to file a Motion to Dismiss." (Tr. 14). Indeed, INDIANA CODE § 35-34-1-4 lists several grounds upon which an information may be dismissed. It is clear, as the State points out, that "[a] discrepancy between the charge and the victim's deposition testimony is not included." (State's Br. 17). Because Baltimore has failed to show that a motion to dismiss would have been granted, he failed to show that counsel rendered deficient performance.

[16] Baltimore next argues that his counsel's failure to object to the testimony of one of the State's witnesses amounts to ineffective representation. Specifically, Baltimore alleges that he was prejudiced by Attorney Shaw's failure to object to Officer Kesling's testimony that "[i]t was an attempted rape scenario in my opinion." (DA Tr. Vol. 2 at 143).[3] To prove ineffective assistance of counsel due to the failure to object, Baltimore must prove that an objection would have been sustained if made and that he was prejudiced by the failure. *Wrinkles v. State*, 749 N.E.2d 1179, 1192 (Ind. 2001), *cert. denied*.

---

[3] We will cite to the direct appeal transcript using the letters "DA."

[17] Here, when asked why she did not object, Attorney Shaw explained that she "didn't feel it was warranted." (Tr. 23). Because we recognize that there is a strong presumption that counsel rendered adequate legal assistance and afford trial counsel "considerable discretion in choosing strategy and tactics[,]" we will accord those decisions deference. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001), *reh'g denied*, *cert. denied*. Baltimore has failed to show that an objection would have been sustained or that he was prejudiced by the failure, and therefore he has failed to overcome the strong presumption of effective assistance of counsel. *See Smith v. State*, 822 N.E.2d 193, 202 (Ind. Ct. App. 2005) (holding that to overcome the strong presumption of adequate legal assistance, a petitioner must offer "strong and convincing evidence" to the contrary), *trans. denied*.

[18] Finally, Baltimore argues that he received ineffective representation when his trial counsel failed to object to "various instances" of prosecutorial misconduct. (Baltimore's Br. 50). As explained above, to prove ineffective assistance of counsel due to the failure to object, Baltimore must prove that an objection would have been sustained if made and that he was prejudiced by the failure. *Wrinkles*, 749 N.E.2d at 1192. Baltimore first alleges that during opening statements, his counsel should have objected when the prosecuting attorney expressed his personal opinion regarding Baltimore's guilt and character. Baltimore next alleges that during closing arguments, Attorney Shaw should have objected when the prosecuting attorney expressed his personal opinion and vouched for the truthfulness of a witness. Baltimore also argues that

Attorney Shaw rendered ineffective assistance by failing to object to the prosecutor's references to him by race during the trial.

[19] We first address Baltimore's argument that Attorney Shaw should have objected during opening statements when the prosecutor stated that "the felony [Baltimore] intended to commit was sexual battery, more than likely rape. That's where he was going with this until he got caught." (DA Tr. Vol. 1 at 104). He also argues that it was improper for the prosecutor to show his picture with the word guilty across his face during opening statements, and then for the prosecutor to state:

> But you will be able to see through the evidence, through the words, through the pictures, through the signs, that Lavern Baltimore is more than just guilty, he was a sexual predator on June 16th. He saw somebody weak, smaller, and he took advantage of her. You may think that that is the conclusion of the case. I say not. I think that this case is not about the [wrongdoings] and the evil intent of the Defendant. It's about the courage and strength of somebody less fortunate.

(DA Tr. Vol. 1 at 106).

[20] Although Attorney Shaw did not object, she explained during the post-conviction hearing that she typically does not object during opening statements because "[i]t's sometimes better to not draw attention to something . . . that they've said versus making it a big thing and redrawing attention to the comment in front of the jury . . . ." (Tr. 16). Strategic decisions do not amount to ineffective assistance of counsel. *See Potter v. State*, 684 N.E.2d 1127, 1133 (Ind. 1997) (holding that a failure to object is not ineffective assistance of

counsel "if counsel's failure to object was the result of trial strategy"). Accordingly, Baltimore has failed to show that his counsel rendered ineffective assistance of counsel.

[21] Baltimore next argues that Attorney Shaw should have objected to the following closing argument regarding David:

> He has a trach, which makes it difficult to talk. Before we go there, there was you know . . . that took a lot of courage for that man to come here and testify. I mean, you know, he came to court in his best clothes . . . and he was very believable, he told you what you knew, what he saw, and overcame, I think, a lot of his own problems to tell you what happened. And both of those were tough things and that makes it tough. It makes it even tougher than it normally would.

(DA Tr. Vol. 2 at 117). He also asserts that counsel should have objected when the prosecutor argued on rebuttal that "Baltimore picked on somebody and chose somebody to assault, to batter, to possibly rape, because of their condition." (DA Tr. Vol. 2 at 139).

[22] Here, Attorney Shaw testified that not objecting during closing arguments is a "strategic decision to not draw attention to something that [the State] said." (Tr. 18). As previously explained, strategic decisions do not necessarily amount to ineffective assistance of counsel. *See Potter*, 684 N.E.2d at 1133. Accordingly, Baltimore has failed to show that an objection would have been sustained or that he was prejudiced by the failure.

[23] Additionally, Baltimore contends that his counsel should have objected when the prosecutor referred to him during trial as "the black man" when questioning

Sandra. (Baltimore's Br. 52). The victim, Sandra, is deaf and testified with the assistance of an American Sign Language interpreter. Initially, Sandra tried to identify Baltimore by spelling his name. She signed "L-e-a-v-e[]" for his first name and "B-l-i-m-e-r-e[]" for his last name. (DA Tr. Vol. 2 at 40). When this proved to be too difficult, she identified and spoke about Baltimore by referring to him as "the black man." Attorney Shaw testified at the post-conviction hearing that examining Sandra "was very difficult." (Tr. 38). She further explained that the attorneys "had to be careful in how [they] asked questions because the sign language interpreter couldn't relay questions if they were too descriptive." (Tr. 38). Attorney Shaw also explained that "[y]ou had to kinda be very narrow and so you kinda just had to use very basic terms because there wouldn't be a sign for everything." (Tr. 38).

[24] The post-conviction court found that "[i]n order to question [Sandra] at trial, it was necessary for the interpreter, the State and the Defense Counsel to also refer to [Baltimore] as '[t]he [b]lack [m]an.'" (App. 93). Because the references to Baltimore were not based on racial animosity, but rather for the purpose of effectively communicating with Sandra to avoid confusion, Baltimore has failed to show that an objection would have been sustained or that his counsel's performance was deficient. *See Potter*, 684 N.E.2d at 1133.

[25] Baltimore was required to prove to the post-conviction court that his counsel's performance was substandard and that the deficient performance prejudiced his defense. The post-conviction court rejected Baltimore's claims of ineffective assistance of counsel and denied him post-conviction relief. In this appeal,

Baltimore has not demonstrated that the evidence as a whole leads unmistakably and unerringly to a conclusion contrary to the decision of the post-conviction court. Accordingly, we affirm the post-conviction court's judgment.

Affirmed.

Riley, J., and Bailey, J., concur.