## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 29 2016, 8:18 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Buford G. Lee
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Buford G. Lee, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | November 29, 2016 <br><br> Court of Appeals Case No. 10A04-1505-PC-525 <br><br> Appeal from the Clark Circuit Court <br><br> The Honorable Vicki L. Carmichael, Judge <br><br> Trial Court Cause No. 10C04-1405-PC-7 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Petitioner, Buford G. Lee (Lee), appeals the post-conviction court's denial of his petition for post-conviction relief, in which he had challenged his conviction for dealing a narcotic drug within 1,000 feet of a family housing complex, a Class A felony, Ind. Code § 35-48-4-1(b)(3)(B)(iii) (2013).

We affirm.

## ISSUES

Lee raises seven issues on appeal, which we consolidate and restate as the following three issues:

(1) Whether the post-conviction court erred by failing to issue findings of fact and conclusions of law on all issues presented for review;

(2) Whether Lee received ineffective assistance of trial counsel;

(3) Whether the post-conviction court erred by failing to continue the post-conviction hearing in order for Lee to subpoena additional witnesses.

## FACTS AND PROCEDURAL HISTORY

On September 17, 2013, and September 23, 2013, the Jeffersonville Police Department utilized a confidential informant to purchase heroin from Lee. On both occasions, the confidential informant met with Lee at the Jeffersonville Housing Authority in Jeffersonville, Clark County, Indiana, where he exchanged law enforcement funds for approximately .15 grams and .25 grams, respectively, of heroin. During the controlled drug buys, the detectives

maintained surveillance, and the confidential informant was equipped with an electronic recording device.

[5] On October 8, 2013, the State filed an Information, charging Lee with Count I, dealing a narcotic drug within 1,000 feet of a family housing complex, a Class A felony, I.C. § 35-48-4-1(b)(3)(B)(iii) (2013); Count II, possession of a narcotic drug within 1,000 feet of a family housing complex, a Class B felony, I.C. § 35-48-4-6(b)(2)(B)(iii) (2013); Count III, dealing a narcotic drug within 1,000 feet of a family housing complex, a Class A felony, I.C. § 35-48-4-1(b)(3)(B)(iii) (2013); Count IV, possession of a narcotic drug within 1,000 feet of a family housing complex, a Class B felony, I.C. § 35-48-4-6(b)(2)(B)(iii) (2013); and Count V, conspiracy to commit dealing a narcotic drug within 1,000 feet of a family housing complex, a Class A felony, I.C. §§ 35-41-5-2; -48-4-1(b)(3)(B)(iii) (2013). The State also charged Lee as a habitual offender pursuant to Indiana Code section 35-50-2-8(a).

[6] On October 9, 2013, an arrest warrant was issued, and Lee was taken into custody. On October 16, 2013, the trial court held Lee's initial hearing, during which Lee requested a fast and speedy trial, and the trial court appointed a public defender to represent Lee. On October 21, 2013, a public defender, Christopher Sturgeon (Attorney Sturgeon), entered his appearance on Lee's behalf. Within days of taking Lee's case, Attorney Sturgeon issued subpoenas to the detectives involved in the controlled drug transactions for depositions, which were conducted on December 4, 2013.

[7]     A jury trial commenced on December 10, 2013. On the second day of trial, the State, while examining one of the detectives involved in the case, offered into evidence the video recording of at least one of the controlled drug purchases. Shortly thereafter, Lee—via Attorney Sturgeon—moved for a mistrial when the State elicited testimony from the detective which purportedly violated a motion *in limine*. The trial court called for a recess and met with the attorneys in chambers, during which the State proposed a plea deal. Under the terms of the plea deal, Lee would plead guilty to one Count of dealing in a narcotic drug as a Class A felony in exchange for the State's dismissal of the remaining charges. Furthermore, the State would also dismiss all of the charges in two other pending cases, which included a Class A felony charge for dealing cocaine or a narcotic drug, two Class B felony charges for possession of cocaine or a narcotic drug, and two habitual offender charges. Attorney Sturgeon presented the offer to Lee and advised him to accept, which Lee did. The trial court subsequently advised Lee of his rights and found a factual basis for the plea. After finding that Lee's plea was made freely and voluntarily, the trial court accepted the plea agreement and entered a judgment of conviction for a Class A felony charge of dealing in a narcotic drug.

[8]     On January 13, 2014, the trial court held a sentencing hearing. At the beginning of the hearing, Lee informed the trial court that he wished to withdraw his guilty plea based on information that he recently learned after his co-defendant, Paul Overton (Overton), provided him with copies of the depositions of the detectives who were involved in the controlled drug

transactions. Because the trial court had already accepted the plea agreement and entered a judgment of conviction, it declined Lee's request and advised him that he could file a petition for post-conviction relief. Thereafter, the trial court sentenced Lee to a term of twenty-five years, with twenty years executed in the Indiana Department of Correction and five years suspended to probation.

[9] On July 21, 2014, Lee, *pro se*, filed an Amended Petition for Post-Conviction Relief. In his petition, Lee alleged that Attorney Sturgeon had provided ineffective assistance of counsel, in relevant part, by failing to adequately investigate prior to trial and refusing to file the motions requested by Lee; by withholding evidence from Lee; and by pressuring Lee to sign the plea deal despite the State's lack of evidence. Lee further alleged that the trial court had demonstrated prejudice by allowing the detective to accompany the attorneys into the trial judge's chambers after the detective testified about Lee's prior bad acts in violation of a motion in *limine*; by failing to rule on an objection that the jury had been prejudiced by the detective's testimony; and by denying Lee's right to withdraw from the guilty plea upon discovering certain evidence in the depositions that were withheld by Attorney Sturgeon. On November 17, 2014, the post-conviction court conducted a post-conviction relief hearing. At the close of the evidence, the post-conviction court granted the parties thirty days in which to file proposed findings of fact and conclusions of law. On December 15, 2014, the State submitted its proposed order. On April 14, 2015, Lee submitted his proposed findings of fact and conclusions of law.

[10] On April 20, 2015, the post-conviction court issued its Findings of Fact, Conclusions of Law and Judgment, denying Lee's petition. In particular, the post-conviction court concluded that Lee failed to establish that he received ineffective assistance of counsel and further determined that Lee failed to establish that he was prejudiced by any of the other alleged errors. The post-conviction court stated that it was

> persuaded that if [Lee's] case had been decided by the jury there is [a] high probability that he would not have received an acquittal. The large amount of evidence including audio and video of [Lee] and his actions during the drug transaction presented in the probable cause affidavit show the end result would have been conviction even had counsel acted as [Lee] suggests. The greater the amount of evidence showing [Lee] committed the crime the greater his burden to show he was prejudiced.

(Appellant's Br. p. 33). Additionally, the post-conviction court found no error in the trial court's refusal to allow Lee to withdraw from his guilty plea because "to do so would have resurrected two cases with serious drug charges," and "[t]he demand on judicial resources of granting [Lee] a new trial on three cases appears unwarranted." (Appellant's Br. p. 33).

[11] Lee now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

[12] A post-conviction proceeding affords the petitioner an "opportunity to raise issues that were unknown or unavailable at the time of the original trial or the

direct appeal." *Maymon v. State*, 870 N.E.2d 523, 526 (Ind. Ct. App. 2007) (citing *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied*, 534 U.S. 1164 (2002)), *trans. denied*. However, a post-conviction proceeding does not constitute "a super appeal," and it "provide[s] only a narrow remedy for subsequent collateral challenges to convictions." *Id.* (citing *Ben-Yisrayl*, 738 N.E.2d at 258). Post-conviction proceedings are civil in nature, and, therefore, the petitioner bears the burden of establishing his grounds for relief by a preponderance of the evidence. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002), *cert. denied*, 540 U.S. 830 (2003); *see* Ind. Post-Conviction Rule 1(5).

[13] When appealing the denial of a petition for post-conviction relief, "the petitioner stands in the position of one appealing from a negative judgment." *Willoughby v. State*, 792 N.E.2d 560, 562 (Ind. Ct. App. 2003), *trans. denied*. Our court does not reweigh evidence or assess the credibility of witnesses. *Id.*

> In order to prevail, the petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that the decision will be disturbed as being contrary to law.

*Id.* (internal citation and quotation marks omitted).

## II. *Post-Conviction Court's Findings of Fact and Conclusions of Law*

[14] Lee challenges the post-conviction court's issuance of factual findings and conclusions of law. Pursuant to Indiana Post-Conviction Rule 1(6), the post-

conviction court is required to "make specific findings of fact[] and conclusions of law on all issues presented." On appeal, our court accepts the post-conviction court's factual findings "unless they are 'clearly erroneous'" but we owe no deference to the post-conviction court's legal conclusions. *Stevens*, 770 N.E.2d at 746 (quoting Ind. Trial Rule 52(A)).

[15] Here, Lee asserts that "the problem is the trial court adopted the findings of the [State] when the [State] submitted [its] findings before [Lee] filed his Findings of Fact and Conclusions of Law. Which shows the court did not answer the issues presented for review." (Appellant's Br. p. 13). We find no basis for this contention in the record. The Chronological Case Summary (CCS) establishes that the State filed its proposed findings and conclusions on December 15, 2014, which was within the thirty-day deadline following the post-conviction hearing. Lee filed his proposed findings and conclusions on April 14, 2015. Thereafter, on April 20, 2015, the post-conviction court issued its Findings of Fact, Conclusions of Law and Judgment. Thus, while the post-conviction court did adopt the proposed findings and conclusions of the State verbatim, it did not do so prior to receiving Lee's proposed order for consideration.

[16] Although the wholesale adoption of a party's proposed findings is not prohibited, our supreme court has noted that such a practice "erodes confidence that they reflect the considered judgment of the post-conviction court." *Thompson v. State*, 796 N.E.2d 834, 840 (Ind. Ct. App. 2003) (citing *Stevens*, 770 N.E.2d at 762), *trans. denied*. As support for his position that the post-conviction court's adoption of the State's proposed findings reveals that it failed

to adequately consider all of the issues, Lee vaguely argues that the "trial court would have known it could not deny an affirmative right to terminate counsel." (Appellant's Br. p. 14). Under a different section of his appellate brief, Lee explains that on November 15, 2013, he submitted a notarized request to the trial court to terminate Attorney Sturgeon and proceed *pro se*, but the CCS lacks any indication that such a document was ever filed, and the trial court never acknowledged the request.

[17] We agree with Lee that the post-conviction court's findings do not address the matter of an alleged violation of his Sixth Amendment right to self-representation; however, this is because Lee never raised this issue in his petition for post-conviction relief. Because Lee never presented the issue of a Sixth Amendment violation to the post-conviction court for consideration, it cannot be said that the post-conviction court erred in failing to address this matter in its factual findings and legal conclusions. Moreover, Lee has waived review of any Sixth Amendment violation by raising the issue for the first time on appeal. *See Stevens*, 770 N.E.2d at 746 ("Any '[i]ssues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal.'" (alteration in original) (quoting *Allen v. State*, 749 N.E.2d 1158, 1171 (Ind. 2001))).[1]

---

[1] Thus, we do not address Lee's separate claim that he was denied due process of law by virtue of the trial court's failure to allow him to terminate Attorney Sturgeon and proceed *pro se*.

### III. *Ineffective Assistance of Trial Counsel*

Lee next claims that Attorney Sturgeon provided ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim, a petitioner must establish "both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance." *McCullough v. State*, 987 N.E.2d 1173, 1176 (Ind. Ct. App. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984), *reh'g denied*). A claim of ineffective assistance of counsel will be rejected if the petitioner fails to satisfy either prong. *Id.* Thus, if we are able to "dismiss an ineffective assistance claim on the prejudice prong, we need not address whether counsel's performance was deficient." *Id.* (quoting *Lee v. State*, 892 N.E.2d 1231, 1233 (Ind. 2008)).

An attorney's performance is considered deficient "if it falls below an objective standard of reasonableness based on prevailing professional norms." *Id.* It is well established that "[c]ounsel is accorded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference." *Id.* We are mindful that there is a strong presumption "that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* In order to establish that he was prejudiced by Attorney Sturgeon's performance, Lee "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citations omitted).

[20] According to Lee, when Attorney Sturgeon presented the State's plea deal to Lee in the midst of the trial, Attorney Sturgeon purportedly informed him that he would be found guilty because the detectives would testify that they witnessed Lee handing the drugs to the confidential informant (although there is no support in the record for this supposed conversation between Attorney Sturgeon and Lee). However, after Lee pled guilty, he received a copy of the detectives' depositions from Overton, his co-defendant. Based on his review of the depositions, the probable cause affidavit, and the video recordings, Lee asserts that the evidence establishes that it was actually Overton who personally delivered the heroin to the confidential informant. Thus, Lee now contends that he

> chose to plead guilty on the advice of [Attorney Sturgeon] knowing the facts of his case, specifically, the statement of the detectives as to what the detectives would testify too [*sic*]. [Lee] did not know of the depositions and trusted [Attorney Sturgeon] to let him know the facts of the case, and all information about the case.

(Appellant's Br. p. 15). According to Lee, "[t]his clearly shows the involuntariness of the plea." (Appellant's Br. p. 16).[2] "Moreover, when [Lee] requested in writing to [Attorney Sturgeon] that he wanted to withdraw [the]

---

[2] In his appellate brief, Lee raises a separate argument that he is entitled to post-conviction relief because his plea was neither voluntarily nor intelligently made. However, this argument is simply a reiteration of his ineffective assistance of counsel claim. Moreover, Lee has waived such an argument on appeal because he did not claim in his post-conviction petition that his plea was involuntary and unintelligent, and he has further failed to develop such a cogent, appropriately-cited argument on appeal. *See Stevens*, 770 N.E.2d at 746; Ind. Appellate Rule 46(A)(8)(a).

plea, [Attorney Sturgeon] failed to file [a] [m]otion to [w]ithdraw [the] [p]lea" pursuant to Indiana Code section 35-35-1-4(b). (Appellant's Br. p. 16).[3]

[21] The decision to enter into a guilty plea, although unquestionably influenced by an attorney's advice, ultimately belongs to the defendant. *Manzano v. State*, 12 N.E.3d 321, 326-27 (Ind. Ct. App. 2014) (quoting *State v. Van Cleave*, 674 N.E.2d 1293, 1301 (Ind. 1996)), *trans. denied*; *cert. denied*, 135 S.Ct. 2376 (2015). As such, a claim of ineffective assistance of counsel relating to a guilty plea is distinct "from the tactical or investigatory steps that are the bases of most claims of ineffective assistance of counsel." *Id.* at 326. There are two categories of claims for ineffective assistance of trial counsel following a guilty plea: "(1) failure to advise the defendant on an issue that impairs or overlooks a defense and (2) an incorrect advisement of penal consequences." *McCullough*, 987 N.E.2d at 1176 (citing *Segura v. State*, 749 N.E.2d 496, 500 (Ind. 2001)).

[22] In this case, Lee contends that Attorney Sturgeon misadvised him as to what the State's evidence would reveal, which led him to plead guilty. Essentially, Lee argues that his innocence defense was impaired by Attorney Sturgeon's

---

[3] Although raised in his petition for post-conviction relief, Lee does not contend on appeal that the trial court abused its discretion by declining to allow him to withdraw from the guilty plea; thus, the issue is waived. *See* App. R. 46(A)(8)(a). Rather, Lee's argument is limited to an ineffective assistance of counsel claim based on Attorney Sturgeon's advice about the State's evidence and his failure to file a written motion to withdraw the plea agreement. However, Lee has waived his argument regarding Attorney Sturgeon's failure to file a written motion to withdraw the plea agreement as Lee failed to raise the issue in his petition for post-conviction relief. *See Stevens*, 770 N.E.2d at 746. We note that at the post-conviction hearing, Lee simply asked Attorney Sturgeon whether he had received a letter from Lee indicating Lee's desire to withdraw from the plea, but Lee did nothing to further develop this possible claim of error before the post-conviction court.

misinformation, and he would not have pled guilty had he realized that the evidence actually revealed that it was Overton who physically handed the narcotics to the confidential informant. Therefore, Lee's claim falls into the first category of ineffective assistance claims relating to guilty pleas: a failure to advise the defendant on an issue that impairs or overlooks a defense. In order to prevail, Lee must show

> a reasonable probability of success at trial if the alleged error is one that would have affected a defense. . . . A new trial is of course necessary if an unreliable plea has been accepted. But its costs should not be imposed needlessly, and that would be the result if the petitioner cannot show a reasonable probability that the ultimate result—conviction—would not have occurred despite counsel's error as to a defense.

*Id.* at 1177 (ellipsis in original) (quoting *Segura*, 749 N.E.2d at 503).

[23] We find that Lee has failed to satisfy his burden of establishing that the result of his proceeding would have been different even if Attorney Sturgeon had advised Lee that the detectives never witnessed Lee personally handing heroin to the confidential informant. As the State points out, during at least one of the controlled drug transactions at the Jeffersonville Housing Authority, Lee was observed by a detective *and* recorded on video as he accepted money from the confidential informant. Lee then handed the purchased heroin to Overton, who, in turn, transferred the drugs to the confidential informant. This is sufficient to support Lee's conviction for dealing in narcotics as a Class A felony. *See* I.C. § 35-48-4-1(a)(1)(C),(b)(3)(B)(iii) (2013) (providing that it is a

Class A felony to knowingly or intentionally deliver a narcotic drug within 1,000 feet of a family housing complex); *see also* I.C. § 35-48-1-11 (defining "delivery" for the purposes of delivering a controlled substance as "(1) an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship; or (2) the organizing or supervising of an activity described in subdivision (1)"). Thus, based on the ample evidence of his guilt, Lee has failed to establish a reasonable probability that he would not have been convicted had he proceeded with the jury trial.

[24] Moreover, if Lee had declined the plea agreement, he would have been subject to criminal liability for additional charges in the present case, including: two Class A felonies for dealing in narcotics and conspiracy to commit dealing in narcotics, two Class B felonies for possession of narcotics, and a habitual offender charge. Based on the fact that Lee's second controlled drug transaction was also recorded, there is a reasonable probability that the jury would have convicted him of some or all of these additional charges. Furthermore, had Lee not accepted the plea agreement, he would not have received the benefit of having his charges dismissed in two unrelated cases.

[25] Lee also claims that Attorney Sturgeon was ineffective by failing "to object to the fact there was no Pre Sentence Report to rely on to sentence [Lee], because Indiana Statute mandates a Presentence Report for a person pleading or being convicted of a felony charge." (Appellant's Br. p. 17). Lee further contends that he did not receive a fair sentencing hearing because he

would have submitted additional witnesses that would have testified about the character of [Lee] and the other positive things [Lee] have [sic] done, and other issues. These issues would have allowed the [trial court] to consider mitigating circumstances had [Lee] been found guilty after trial or if he wished to proceed with pleading guilty and receive sentence.

(Appellant's Br. p. 19). We find that Lee has waived this issue for review by raising it for the first time on appeal. *See Stevens*, 770 N.E.2d at 746.

[26] Waiver notwithstanding, we find that Lee's argument is not only meritless, it is also a blatant misrepresentation of the facts. The transcript of the sentencing hearing, which was filed as an exhibit with the post-conviction court, makes it abundantly clear that a pre-sentence investigation (PSI) report was completed prior to sentencing. In fact, at the beginning of the sentencing hearing, the trial court stated:

Probation has indicated to me that there was a problem in the preparation of the PSI, although they have done the best they can, produced one [sic]. But that problem, as indicated in a letter of January 7th, 2014, was that . . . Lee, while in custody[,] stated that he did not plan on accepting a [p]lea [a]greement currently filed with the [c]ourt and was not going to speak with the [p]robation [o]fficer assigned to do the PSI. And therefore she has done the best she could with the . . . limited information that she had.

(Exh. C-1, p. 4). Thereafter, Attorney Sturgeon acknowledged that he had received a copy of the PSI report and had provided the same to Lee. Thus, it is absurd for Lee to now attempt to argue that Attorney Sturgeon was somehow

ineffective in light of the fact that any inadequacies in the PSI report were purely the result of Lee's own willful refusal to cooperate with the probation department. Therefore, we conclude that Lee did not receive ineffective assistance of counsel.

## IV. *Subpoenas*

Lastly, Lee claims that the post-conviction court erred by refusing to continue the post-conviction hearing in order for Lee to secure additional witnesses—specifically, the detectives who investigated his case; his co-defendant, Overton; and another inmate who was not directly linked to Lee's case. Pursuant to Indiana Post-Conviction Rule 1(9):

> If the pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony. If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. If the court finds the proposed witness' testimony is not relevant and probative, it shall enter a finding on the record and refuse to issue the subpoena.

According to the CCS, the post-conviction hearing was initially set for August 5, 2014, but was later reset to September 15, 2014. On July 3, 2014, Lee filed a Praecipe for Issuance of Subpoena(s) to secure Attorney Sturgeon, Overton, another inmate, and three Jeffersonville Police Department detectives as witnesses on September 15, 2014. The trial court granted Lee's request, and on August 6, 2014, the subpoenas were issued, which directed Lee's witnesses to

appear on September 15, 2014. However, on August 19, 2014, the State filed an objection to the issuance of subpoenas based on Lee's failure to submit affidavits with the witnesses' expected testimony. On August 26, 2014, the post-conviction court ordered Lee to submit affidavits specifying the substance of the witnesses' testimony and why their testimony was required. Although the subpoenas were already served, it does not appear that Lee ever complied with the post-conviction court's order to file affidavits. Subsequent to the issuance of the subpoenas, the post-conviction hearing date was rescheduled to November 17, 2014, due to Attorney Sturgeon's unavailability. Lee never requested that the subpoenas be re-issued to reflect the new hearing date.

[29]   At the post-conviction hearing, Lee called Attorney Sturgeon, his brother, and his wife to testify. Thereafter, even though Lee had not subpoenaed his remaining witnesses for this hearing date, Lee nevertheless requested that the post-conviction court continue the matter in order to secure these witnesses. Instead, the post-conviction court asked Lee to explain to what he would expect his witnesses to testify. Lee elaborated that the three detectives "would testify to the giving of deposition of the things that took place as far as what transpired in my case." (Tr. p. 65). Additionally, Lee stated that Overton would testify that Overton overheard Attorney Sturgeon informing Lee

> that I have no grounds to get anything suppressed. I should take
> the plea because if I don't take the plea, I'm going to get fifty (50)
> years on the dope case because the police, they going to take me
> to trial for the cocaine case and the officer was supposed to testify
> that he seen me throw it, that what give me fifty (50) years on a
> Class B [f]elony with a habitual . . . which there's no way

possible I can get fifty (50) years on that case. And Mr. Overton would also testify that him giving me copies of the deposition because I had, because of the results of what took place during the trial date.

(Tr. pp. 66-67). Finally, as to Lee's last witness, a fellow inmate, Lee stated that this witness

would testify to being in the hallway at another time when [Attorney] Sturgeon came to meet with me and we were discussing the strategy of my case and as far as, like, what evidence they had as far as the, him telling me that he seen the tapes and I asked him, you know, if you seen the tapes, let me see the tapes, and he'd tell me, nah, that he can't [do] that, and him lunging, making an aggressive movement towards me.

(Tr. p. 68). The post-conviction court found that the detectives' appearance was not necessary because "their depositions [would] speak for themselves." (Tr. p. 69). As to the other witnesses, the post-conviction court declined to continue the matter because "[Lee] already told me what they would testify to, so I don't need to hear it from them." (Tr. p. 69).

[30] We find no error in the post-conviction court's refusal to continue the matter in order to hear from additional witnesses. Lee failed to comply with Indiana Post-Conviction Rule 1(9) by requesting the issuance of subpoenas with the updated hearing date and by filing affidavits with each witness' expected testimony. Furthermore, it was entirely within the post-conviction court's discretion to determine that the anticipated testimony of Lee's witnesses was not relevant or probative. *See Rondeau v. State*, 48 N.E.3d 907, 916 (Ind. Ct.

App. 2016) (noting the standard for denying subpoenas in a post-conviction proceeding as being an abuse of discretion), *trans. denied*. Here, the post-conviction court clearly found that the testimony of the detectives was neither relevant nor probative as such testimony would merely be repetitive of their depositions. Likewise, the anticipated testimony of Overton and the other inmate was largely cumulative of Lee's other evidence which suggested that Attorney Sturgeon withheld evidence from Lee. We also note that Lee had not alleged in his post-conviction relief petition that Attorney Sturgeon made any aggressive movement toward him. Therefore, we conclude that the post-conviction court properly exercised its discretion in declining to continue the hearing to allow for Lee to subpoena additional witnesses.

## CONCLUSION

[31] Based on the foregoing, we conclude that the post-conviction court properly denied Lee's petition for post-conviction relief.

[32] Affirmed.

[33] Bailey, J. and Barnes, J. concur